## W. ARMSTRONG v. W. M. PARCHMAN et al.

1. WAGER ON HORSE RACING.—In an action to recover of a stakeholder property placed in his hands as a wager on a horse-race, the terms of which were reduced to writing, in the absence of allegation and proof that the rules of the turf entered in and formed part of the contract to run the race, it is error to instruct the jury that the decision of the parties selected to witness the race and announce their conclusion on the relative speed of the horses is conclusive as to the question whether the race had been fair and as had been stipulated between the parties; the question of fairness should have been left to the jury.

2. RULES OF THE TURF.—The court will not take notice of the rules of the turf without allegation and proof.

APPEAL from Bee.  Tried below before Hon. D. D. Claiborne.

*J. Payne*, for appellant, cited Bailes *v.* Williams, 15 Texas, 318; Kirkland *v.* Randon, 8 Texas, 10; McElroy *v.* Carmichael, 6 Texas, 454; Reynolds *v.* Williams, 4 McCord, 211; 2 Wills, 309; 1 Texas, 312; Chamblee *v.* Tarbox, 27 Texas, 146; Bailey *v.* Mills, 27 Texas, 438; Rogers *v.* Brodnax, 24 Texas, 543: Spence *v.* Onstott, 3 Texas, 147; Chandler *v.* Fulton, 10 Texas, 2; Lee *v.* Hamilton, 12 Texas, 413.

MOORE, J.—This was an action to recover from the stake-holder money and property placed in his hands as a wager upon a horse-race, upon the ground that the race upon which it had been wagered had not been fairly run, in accordance with the terms of said wager.

Contracts or agreements for wagers on horse-races, as has been frequently said by this court, are not illegal at common law, and as they are not prohibited by statute, they are, therefore, excluded from the general class of gaming contracts, and, when fair, and without taint of fraud or deceit in their fulfillment, they may be maintained and enforced as any other valid contract. (Kirkland *v.* Randon, 8 Texas, 10; McElroy *v.* Carmichael, 6 Texas, 454.) It has always been regarded, however, as a fundamental principle, that such contracts, to entitle them to the favorable consideration of the court, must be honest and fair beyond exception, both in their inception and execution. (Bailes *v.* Williams, 15 Texas, 318.)

The sole ground upon which wagers of this character are sanctioned, is, that they tend to encourage an improvement in the breed and qualities of the horse.

Therefore the main object and purpose of such contracts, in contemplation of law, is to test the speed and endurance of the respective horses upon which the wager is made. Surely, then, if this purpose, for which the wager was made, has not been accomplished, and the failure to do this is in no way attributable to the party resisting the execution of the contract, it cannot be insisted that such wager has been either lost or won. And, if not, certainly the parties to it may recover from

the stakeholder the money or property placed in his hand as a wager on its result.

The appellant insists that the race upon which the money and property for which he sues was bet, was not, in fact, run, and that the failure of his horse to start in the race was not attributable to any fault of his, but solely to the time and manner of giving the word for the starting of the horses by the party by whom, under the terms of the race, the word was to be given, and his calling, immediately afterwards, for the other horse to stop.

By the terms of the contract for the race, the horses were "to come up to the mark and start at the word Go!" As appellant's horse was not turned loose, and did not start in the race, his right to demand a return of the stake depended upon the fact whether, under the circumstances under which the word "Go!" was given, and its almost immediate recall, the word was fairly and properly given, so that it was his duty to have turned his horse loose; or, whether by his failure to do so, he, in effect, yielded the race to the other party. Or, to state it more concisely, whether, owing to the time and manner of giving the word and its recall, appellant, without default on his part, was prevented from making a fair test of the speed of the horses.

To guide the jury in determining this issue, the court, in effect, instructed them that they should find for appellee if the party who gave the word acted in good faith and in accordance with the agreement of the parties, and the judges appointed by them adjudged the race in his favor, whether appellant's horse started, ran through, or not. And also, "when parties "agree to run a horse-race, and appoint judges to decide it, "their decision is final unless it be shown satisfactorily to the "jury that said judges acted fraudulently in adjudging said "race."

These instructions withdrew from the jury the determination of the question whether or not there had been a fair race as stipulated in the agreement between the parties, and sub-

mitted to their determination whether the party giving the word "go," and the persons chosen to judge the race had acted in good faith, or fraudulently. It in effect substituted the decision of parties selected to witness the race, and announce their conclusion on the relative speed of the horses, in place of that of the court and jury or to the due and legal execution of a contract or agreement to run the race, and the rights of the parties under it. Unless it has been alleged and proved that there is some rule of the turf, which in some way entered into, and became a part of the contract under which the race was to be run, which authorized this, there is certainly nothing to warrant such a proposition.

The judgment is reversed and the cause remanded.